IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| C. KAUI JOCHANAN AMSTERDAM,  )<br>                              )<br>         Plaintiff,          )<br>                              )<br>     vs.                      )<br>                              )<br>STATE OF HAWAII, OFFICE OF    )<br>THE GOVERNOR, GOVERNOR DAVID  )<br>IGE, BOARD CHAIRMAN OF TMT    )<br>OBSERVATORY CORP., CHAIRMAN   )<br>HENRY YANG, ASSOCIATED STATE  )<br>AGENCIES, BOARD OF LAND AND   )<br>NATURAL RESOURCES, STATE OF   )<br>HAWAII, DEPARTMENT OF LAND    )<br>AND NATURAL RESOURCES, STATE  )<br>OF HAWAII, SUZANNE CASE, IN   )<br>HER OFFICIAL CAPACITY AS      )<br>CHAIR OF THE BOARD OF LAND    )<br>AND NATURAL RESOURCES AND     )<br>DIRECTOR OF THE DEPARTMENT OF )<br>LAND AND NATURAL RESOURCES,   )<br>THE UNIVERSITY OF HAWAII AT   )<br>HILO AND MANOA,               )<br>REPRESENTATIVES OF THE        )<br>NATIONS OF CHINA, INDIA,      )<br>JAPAN, CANADA, AND THE UNITED )<br>STATES INVOLVED IN THE TMT    )<br>PROJECT, ALL REPRESENTATIVES  )<br>AS INDIVIDUALS AND IN THEIR   )<br>OFFICIAL CAPACITY,            )<br>                              )<br>         Defendants.          )<br>_____) | CIVIL 15-00338 LEK-BMK |

**ORDER DENYING PLAINTIFF'S MOTION FOR AN IMMEDIATE
TEMPORARY INJUNCTION REGARDING THE THIRTY METER TELESCOPE
OR TMT PROJECT ATOP THE SACRED VOLCANIC MOUNTAIN
OF MAUNA KEA AND PLAINTIFF'S MOTION REGARDING THE
<u>THIRTY METER TELESCOPE ATOP THE SACRED MOUNTAIN OF MAUNA KEA</u>**

Before the Court are pro se Plaintiff C. Kaui Jochanan

Amsterdam's ("Plaintiff") "Motion for an Immediate Temporary

Injunction Regarding the Thirty Meter Telescope or TMT Project Atop the Sacred Volcanic Mountain of Mauna Kea" and "Motion Regarding the Thirty Meter Telescope Atop the Sacred Mountain of Mauna Kea," both filed on August 24, 2015 (collectively "Motions").  [Dkt. nos. 2, 3.]  Defendant University of Hawai`i ("the University"), Defendant Henry Yang, in his official capacity as Chair of the Board of the TMT Observatory Corp. ("Yang"), and Defendant Governor David Ige, in his official capacity ("the Governor"), each filed a memorandum in opposition on September 23, 2015.  [Dkt. nos. 22, 24, 25.]  These matters came on for hearing on October 14, 2015.  On October 23, 2015, Plaintiff filed a document titled "Memorandum Regarding Helpful Coordination with Counsel of Defendants of Project to Build Thirty Meter Telescope Atop Sacred Volcanic Mountain of Mauna Kea" ("10/23/15 Memorandum").  [Dkt. no. 34.]  After careful consideration of the Motions, supporting and opposing memoranda, the arguments presented at the hearing, and the relevant legal authority, Plaintiff's Motions are HEREBY DENIED for the reasons set forth below.

## BACKGROUND

Plaintiff filed the Motions concurrently with his "Complaint Regarding the Thirty Meter Telescope Atop the Sacred Volcanic Mountain of Mauna Kea" ("Complaint").  [Dkt. no. 1.]  He states that he is: a Native Hawaiian of the Alii Kalakauaehu

line; a "Kanaka Maoli Beneficiary of the Native Hawaiian Trust Fund established by the Hawaii Admission Act of 1959"; the "former Prime Minister of the Interim Government of The Kingdom of Hawaii"; and a member of "Neighborhood Board #10 serving and representing Native Hawaiians, their needs and interests in Lower Punchbowl, which includes that area of the Papakolea Hawaiian Homestead." [Complaint at 2.] He asserts that, in this action, he represents the "Kanaka Maoli living in the Papakolea Hawaiian Homestead." [Id.] Plaintiff brings this action to challenge "[t]he advancement of the TMT Project and subsequent restrictive and prohibitive treatment and arrests of Native Hawaiians by the Defendants," which he alleges violate "the State of Hawaii's responsibilities as mandated by the Hawaii Admission Act of 1959, the Constitution of the State of Hawaii, and Congressional Acts of the United States Congress." [Id.]

Plaintiff states that Mauna Kea is sacred in the "values, traditions, and culture of native Hawaiians." [Id. at 4.] It "is the meeting point between the sky and the earth, a temple built by the divine Creator and the point of Hawaii's ties to Creation and itself." [Id. at 5.] Plaintiff also alleges that Mauna Kea is part of the Crown Lands of the Kingdom of Hawai`i,[1] and he argues that he is a beneficiary of the Crown

---

[1] "In 1898, the Republic of Hawaii ceded to the United States the absolute fee and ownership of all public, Government,
(continued...)

Lands.

He argues that restricting and/or prohibiting him from accessing "the upper part" of Mauna Kea, or from being on the mountain at all, violates and desecrates the mountain's sacred nature, is "incongruent with Native Hawaiian belief," and violates the Hawaii Admission Act of 1959 ("Admission Act"), Pub. L. No. 86-3, 73 Stat. 4, as well as the Hawaiian Homes Commission Act of 1920 ("HHCA"), Pub. L. No. 67-34, 42 Stat. 108. [Id. at 4-5.] He argues that the desecration of the sacred nature of Mauna Kea injures and humiliates him and other Native Hawaiians.

Beyond the construction of the TMT, Plaintiff argues that the operation of it after completion will create debris on Mauna Kea, which has occurred with other telescopes. In addition, Plaintiff asserts that he and other Native Hawaiians have been arrested for exercising their right to access Mauna Kea. Plaintiff argues that the arrests violate the rights of Native Hawaiians and that the defendants have an "obligation to protect and preserve such Native Hawaiian Rights." [Id. at 5.] Plaintiff argues that the damage that would be done to Mauna Kea if the TMT Project is allowed to go forward would be irreversible. He acknowledges that Native Hawaiian groups have

---

[1](...continued)
or Crown lands." Dep't of Hawaiian Home Lands v. United States, 676 F. Supp. 1024, 1026 (D. Hawai`i 1988).

previously protested other telescopes, but he argues that the TMT "is the straw that broke the camel's back." [Id. (internal quotation marks omitted).]

Plaintiff emphasizes that article XII, section 7 of the Hawai`i State Constitution[2] requires the State of Hawai`i to "protect all rights, customarily and traditionally exercised for subsistence, cultural, and religious purposes and possessed by ahupua`a tenants who are descendants of Native Hawaiians." [Id. at 6 (quotation marks omitted).] He argues that the same conduct by the defendants that violates the Admission Act and the HHCA also violates the state constitution. [Id.] Plaintiff argues that his right, and the right of Native Hawaiians in general, "to exercise their traditional and customary values and actions are infringed upon and further undermined, weakened, and destroyed rather than being preserved and protected as mandated by Law." [Id. at 7-8.]

Plaintiff also argues that, pursuant to the Native Hawaiian Education Act of 1994 and the American Indian Religious Freedom Act of 1978, 42 U.S.C. § 1996, the United States government has a special political relationship with Native

---

[2] Article XII, § 7 states: "The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua`a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights."

Hawaiians - and therefore with him.  He argues that the federal government is required "to protect and preserve the traditional and customary practices of Native Hawaiians."  [Id. at 8.]  Plaintiff argues that the special relationship between the federal government and the Native Hawaiian people is also evidenced by various federal statues, including, *inter alia*, the Native American Act of 1974, 42 U.S.C. § 2991, *et seq.*, the National Museum of the American Indian Act, 20 U.S.C. § 80q, *et seq.*, and the Native American Graves Protection and Repatriation Act, 25 U.S.C. § 3001, *et seq.*  He contends that, in light of the special status of Native Hawaiians established by these statutes, the defendants have violated both state and federal laws.

Plaintiff argues that these federal statutes, as well as 42 U.S.C. § 1983, give federal courts jurisdiction to intervene to protect the rights of Native Hawaiians.  He also argues that there is jurisdiction over this case because Congress abrogated the State's Eleventh Amendment immunity, as evidenced by the adoption of "Title IX pursuant to enforcement provisions of the Fourteenth Amendment."  [Id. at 11.]

Plaintiff acknowledges that the defendants have proposed arrangements that would allow Native Hawaiians to have access to parts of Mauna Kea during the TMT Project, but he argues that the proposals are insufficient.  Plaintiff urges the Court to include the Kingdom of Hawai`i in the issue of the TMT

Project because Mauna Kea is Crown Land.  He also argues that "the five Nations of China, India, Japan, Canada, and the United states have a central interest in the TMT Project as they compete with European Nations to explore the secrets of the Universe." [Id.]  Plaintiff suggests that, if those five nations would agree to recognize the Kingdom of Hawai`i and to encourage other nations to do the same, the Native Hawaiian community may support the TMT Project.

In the instant Motions, Plaintiff seeks either a temporary restraining order ("TRO") or a preliminary injunction to stop the TMT Project, for the reasons set forth in the Complaint.  The Court notes that Plaintiff states in the 10/23/15 Memorandum that he met with counsel for the defendants and that the "meeting was helpful and provided coordination toward meeting the needs of those involved and advancing a satisfactory resolution to the case."  [10/23/15 Mem. at 2.]  While this Court commends the parties' efforts to try to resolve this matter, this Court has not considered Plaintiff's 10/23/15 Memorandum in ruling on the instant Motions.

### STANDARD

This Court has described the applicable standards as follows:

> In general, the standard for a temporary restraining order or a preliminary injunction is as follows:

> "[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008). The standard for granting a preliminary injunction and the standard for granting a temporary restraining order are identical. See Haw. Cnty. Green Party v. Clinton, 980 F. Supp. 1160, 1164 (D. Haw. 1997); Fed. R. Civ. P. 65.

Sakala v. BAC Home Loans Servicing, LP, CV. No. 10-00578 DAE-LEK, 2011 WL 719482, at *4 (D. Hawai`i Feb. 22, 2011) (alteration in original).

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)) (explaining that, "[t]o the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer controlling, or even viable" (footnote omitted)); see also Winter, 129 S. Ct. at 374-76 (holding that, even where a likelihood of success on the merits is established, a mere "possibility" of irreparable injury is insufficient to warrant preliminary injunctive relief, because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 685 F. Supp. 2d 1123, 1128-29 (D. Hawai`i 2010) (footnote and some citations omitted)

8

> (alterations in original).  The Ninth Circuit has held that its "serious questions" version of the sliding scale test for preliminary injunctions survives Winter to the extent that, a court may grant a preliminary injunction where the plaintiff (1) "demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor[,]" and (2) satisfies the other Winter factors, likelihood of irreparable injury and that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (citation and block quote format omitted) (some alterations in original).

Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 47 F. Supp. 3d 1069, 1075-76 (D. Hawai`i 2014) (alterations in Pac. Radiation) (some citations omitted).  "Regardless of which standard applies, the movant always has the burden of proof on each element of the test."  Hernandez v. Spencer, CIV. NO. 15-00256 SOM-RLP, 2015 WL 4999699, at *1 (D. Hawai`i Aug. 20, 2015) (citations and quotation marks omitted).

## **DISCUSSION**

**I.   Standing**

The Governor, the University, and Yang all argue that this Court does not have jurisdiction over Plaintiff's case because he does not have standing to bring the claims he alleges in the Complaint.  The Governor, the University, and Yang have each filed a motion to dismiss Plaintiff's Complaint.  [Dkt. nos. 15, 18, 23.]  The Governor's motion and the University's motion are set for hearing before this Court on November 23, 2015, and

Yang's motion is set for hearing on December 21, 2015.

The standing issue will be squarely before this Court when it considers the motions to dismiss. In contrast, a ruling on the standing issue is not critical to the disposition of the instant Motions because, even if this Court ruled in favor of Plaintiff on the standing issue, this Court would still find that Plaintiff has failed to prove the required elements for a TRO or preliminary injunction. This Court therefore declines to consider Plaintiff's standing in connection with the instant Motions. For purposes of the instant Motions only, this Court will assume that Plaintiff has standing to pursue his claims in his Complaint.[3]

## II. **Kingdom of Hawai`i**

Plaintiff argues that, in ruling on the Motions, this Court should consider the interests of the Kingdom of Hawai`i because Mauna Kea is part of the Crown Lands and because the upcoming convention of Native Hawaiians will address the recognition and advancement of the Kingdom. He argues that, if

---

[3] This Court will not consider the portions of Plaintiff's claims that he purports to bring on behalf of other persons because "a plaintiff acting pro se cannot represent others." See Jorss v. Schwarzenegger, 168 F. App'x 825, 826 (9th Cir. 2006) (citing Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself.") (internal quotations and citation omitted)).

this Court denies the Motions and allows the TMT Project to go forward, it should compel China, India, Japan, Canada, and the United States to: 1) recognize the Kingdom of Hawai`i and 2) encourage other nations to do likewise.  Plaintiff argues that, if the five nations do so, it would improve the relationship between the nations and the Native Hawaiian community and could also allow them to come to an agreement whereby the Native Hawaiian community would support the TMT Project.

The Court acknowledges that the upcoming convention is a historic event in the effort to achieve self-governance for Native Hawaiians.  However, the recognition of the Kingdom of Hawai`i and the issue of whether certain land belongs to the Kingdom are nonjusticiable political questions that this Court does not have jurisdiction to decide.  See, e.g., Algal Partners, L.P. v. Santos, Civil No. 13-00562 LEK-BMK, 2014 WL 1653084, at *2-3, *7 (D. Hawai`i Apr. 23, 2014) (rejecting the defendant's arguments that this Court lacked jurisdiction over an action regarding certain property because the defendant was a citizen of the Kingdom of Hawai`i and because the property belonged to the Kingdom).  Thus, while this Court understands Plaintiff's position that the Kingdom of Hawai`i should have a prominent position in the resolution of the issues regarding the construction and operation of the TMT on Mauna Kea, this Court

does not have jurisdiction to rule on issues regarding the recognition of the Kingdom.  This Court's rulings on the Motions are limited to Plaintiff's interests and alleged injuries in this case.

### III. Required Elements for a TRO or Preliminary Injunction

First, based on Plaintiff's submissions and his arguments at the hearing, this Court finds that Plaintiff has a sincerely held belief that Mauna Kea is a sacred religious place. This Court also appreciates Plaintiff's desire to reach a collaborative solution that would be beneficial to all of the persons and entities that have an interest in the dispute regarding the TMT Project.  Plaintiff has argued that granting a TRO or preliminary injunction which halts the TMT Project would create a cooling off period for everyone involved and would give them time to work toward a collaborative solution that results in a "win-win" situation for all concerned.  However, even assuming, for the sake of argument, that granting Plaintiff's Motions would improve the relationship between the Native Hawaiian community and the defendants in this case, this Court cannot issue a TRO or a preliminary injunction on that basis alone.  This Court must adhere to the rule of law, and it can only grant the relief that Plaintiff seeks if he carries his burden of establishing all of the requirements described above.

The critical requirement in the instant case is whether

Plaintiff can establish that he is facing imminent irreparable harm as a result of the defendants' actions regarding the TMT Project. See Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." (citation and internal quotation marks omitted)).

As Plaintiff acknowledged, there are other telescopes and other man-made structures on Mauna Kea that pre-existed the TMT Project. Thus, even prior to the TMT Project, Plaintiff would not have been able to enjoy Mauna Kea in a pristine condition. This Court understands and sympathizes with Plaintiff's argument that the addition of the TMT to the existing developments on Mauna Kea is the straw that broke the camel's back, but, the fact remains that Plaintiff must establish that the injury he faces is fairly traceable to the specific conduct challenged in this case and not to the development on Mauna Kea in general. Plaintiff has not identified any concrete or particularized injury that he faces as a result of the TMT Project. At the hearing, Plaintiff pointed out that the state courts have invalidated the emergency measures pursuant to which

local officials arrested protestors of the TMT Project.[4] Thus, even assuming that Plaintiff previously faced a threat of being arrested for trying to access Mauna Kea, that is no longer an actual and imminent threat. Plaintiff has not established any specific way that the TMT Project prevents him from practicing his religion. For example, Plaintiff has not shown that the TMT Project precludes him from accessing other areas of Mauna Kea outside of the project site. At most, Plaintiff has established that he believes that, if the TMT Project continues, the size of the structure would detract from Mauna Kea's sacred atmosphere.

      Having carefully considered all of the parties' submissions and arguments at the hearing, this Court FINDS that Plaintiff has failed to establish the level of irreparable harm necessary to warrant the extraordinary remedy of a TRO or a preliminary injunction. While this Court acknowledges the sincerity of Plaintiff's beliefs and the religious and cultural significance of Mauna Kea, Plaintiff's general objection to the TMT Project is not enough to carry his burden on the issue of irreparable harm.

---

[4] Plaintiff argues that the invalidation of the emergency measures proves that the arrests violated the rights of the people who were arrested. However, the claims arising from the allegedly wrongful arrests are distinct from Plaintiff's challenges to the TMT Project itself, and those claims would be brought against defendants who are not part of this action.

Insofar as irreparable harm is a required element under both the <u>Winter</u> analysis and the Ninth Circuit's sliding scale analysis, this Court does not need to address the other requirements. Even if this Court found that all of the other factors weighed in favor of Plaintiff, those findings would not overcome the fact that he has not established irreparable harm. This Court therefore makes no findings or conclusions at this time regarding the merits of Plaintiff's claims, the balancing of the equities, or the public interest. This Court CONCLUDES that Plaintiff is not entitled to a TRO or a preliminary injunction.

## **CONCLUSION**

On the basis of the foregoing, Plaintiff's "Motion for an Immediate Temporary Injunction Regarding the Thirty Meter Telescope or TMT Project Atop the Sacred Volcanic Mountain of Mauna Kea," and "Motion Regarding the Thirty Meter Telescope Atop the Sacred Mountain of Mauna Kea," both filed August 24, 2015, are HEREBY DENIED. The denial is WITHOUT PREJUDICE, insofar as Plaintiff may bring a new motion for a temporary restraining order or preliminary injunction at a later stage of this case, if warranted under the circumstances.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 27, 2015.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**C. KAUI JOCHANAN AMSTERDAM VS. STATE OF HAWAII, ET. AL; CIVIL NO. 15-00338 LEK-BMK; ORDER DENYING PLAINTIFF'S MOTION FOR AN IMMEDIATE TEMPORARY INJUNCTION REGARDING THE THIRTY METER TELESCOPE OR TMT PROJECT ATOP THE SACRED VOLCANIC MOUNTAIN OF MAUNA KEA AND PLAINTIFF'S MOTION REGARDING THE THIRTY METER TELESCOPE ATOP THE SACRED MOUNTAIN OF MAUNA KEA**